**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER KUHN, | |
| Plaintiff, | Civil Action No. 24-1123 (ES) (MAH) |
| v. | OPINION |
| JOVAN WILLFORD, | |
| Defendant. | |

SALAS, DISTRICT JUDGE

Before the Court is defendant Jovan Willford's ("Defendant") motion to dismiss (D.E. No. 14 ("Motion" or "Mot.")) plaintiff Peter Kuhn's ("Plaintiff") Complaint (D.E. No. 1 ("Complaint" or "Compl.")). Plaintiff filed an opposition (D.E. No. 19 ("Opp. Br.")), and Defendant filed a reply (D.E. No. 23 ("Reply Br.")). Having considered the parties' submissions, the Court decides Defendant's Motion without oral argument. *See* Fed. R. Civ. P. 78(b); *see also* L. Civ. R. 78.1(b). For the following reasons, Defendant's Motion is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background[1]

Plaintiff is an individual who currently resides in Alabama and who has over twenty-five years of experience in the healthcare technology industry. (Compl. ¶¶ 8 & 12). In December 2020, Plaintiff became the Chief Sales and Growth Officer of Healthgrades. (*Id.* ¶ 19). Defendant is an individual who currently resides in New Jersey and was hired as the Chief Executive Officer

---

[1]    The factual background is taken from the allegations in the Complaint. For purposes of the instant Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

("CEO") of Healthgrades in March 2021.  (*Id.* ¶¶ 9 & 20).  In June 2021, Healthgrades sold its Marketplace division in an asset sale, and, following this divestiture, Mercury Healthcare ("Mercury Healthcare" or the "Company") was created in July 2021.  (*Id.* ¶¶ 21–22).  Shortly thereafter, in August 2021, Plaintiff was promoted to Chief Revenue Officer ("CRO") of the Company.  (*Id.* ¶ 26).

At some point, Defendant hired A&M Consulting to do a financial review of the remaining business at Mercury Healthcare,[2] and "[u]pon information and belief, A&M Consulting immediately discovered that the leftover business at Mercury was losing $30 million annually (a surprise to the Board) and was suffering with major product and customer satisfaction issues on two primary product lines."  (*Id.* ¶¶ 23–24).  Based on A&M Consulting's recommendations, from August 2021 to December 2021, Plaintiff initiated a cost-cutting plan to reduce sales and certain staff members.  (*Id.* ¶ 31).

From mid-November 2021 through December 2021, Defendant briefly "disappeared" from the Company after presenting a grim financial plan to the Board of Directors, and during this time "there was a rumor of a Board-initiated fire sale spreading through the management team[.]"  (*Id.* ¶ 33).  Defendant "suddenly reappear[ed]" in December 2021 and held a meeting with upper management and the executive team members, stating that private equity firm Vestar Capital Partners had agreed to invest up to $30 million in the Company over three years to help fund its turnaround.  (*Id.* ¶ 34).  Defendant subsequently presented a five-year plan that included "killing off" two of the Company's major product lines.  (*Id.* ¶ 35).  Plaintiff had concerns about this plan, and at some point following this meeting, he approached Defendant and "asked Defendant if the Company was committed to a turnaround or if it was instead being positioned for a sale."  (*Id.* ¶

---

[2]    The Complaint does not specify when Defendant allegedly hired A&M Consulting, nor when this alleged financial review occurred.  (*See* Compl.).

38). "Defendant assured Plaintiff that the Company was not going to be sold and was focused on executing its [five]-year operating plan[.]" (*Id.* ¶ 41). "Upon information and belief, and contrary to what Defendant had expressly told Plaintiff, the Company had executed a letter of intent to be sold in December 2021."[3] (*Id.* ¶ 43).

At some point "[p]rior to December 2021, Defendant learned that the Company intended to sell its assets to WebMD and that plans had been put into place to do so[,]" which "plans included substantial bonuses for the chief executives of the Company." (*Id.* ¶ 3). Shortly after Defendant learned about this intended sale, all the other chief officers of the Company—excluding Plaintiff—were also informed of the intended sale. (*Id.* ¶ 4).

From December 2021 through March 2022, Plaintiff had a series of conversations with Defendant regarding the then-current direction of the Company and its effect on the Company's culture. (*Id.* ¶ 45). According to Plaintiff, Defendant created a hostile work environment for him during this time by instructing him to make "cold calls" to potential customers and to complete other tasks more frequently reserved for lower-level employees, in an effort to force him to resign. (*Id.* ¶¶ 46–49, 52 & 61). Plaintiff was also "uninvited" to the Q4 2021 Board of Directors meeting, and at some point after that meeting he again approached Defendant and asked him if he was planning to sell the Company. (*Id.* ¶¶ 50 & 53). Defendant again told Plaintiff that the Company was not going to be sold and was committed to a turnaround. (*Id.* ¶ 53).

On March 10, 2022, Plaintiff submitted his resignation notice "[a]s a result of Defendant's hostile treatment of [him], and in response to Defendant's stated intent to pursue a fatally flawed turnaround plan[.]" (*Id.* ¶ 54). Plaintiff's last day at the Company was April 1, 2022. (*Id.* ¶ 55).

---

[3]    Defendant asserts in his Motion that although he accepts the allegations in the Complaint as true for purposes of this Motion (as he must), he "denies that in December 2021 there was an executed letter of intent to sell the Company." (D.E. No. 14-1 ("Mov. Br.") at 8 n.3).

Two months later, in June 2022, WebMD announced that it had acquired the Company, though the terms of this deal were not publicly disclosed at the time.  (*Id.* ¶ 56).  However, Plaintiff received a notice pursuant to Internal Revenue Code Section 208G that showed multi-million-dollar deal bonus payments made to Defendant and other executive members of the Company.  (*Id.* ¶ 57).

Plaintiff alleges that Defendant "intentionally suppressed" certain information from him that caused him to resign from his position as CRO of the Company.  (*See generally* Compl.).  Specifically, Plaintiff alleges (i) that Defendant "suppressed" from him the fact that in December 2021 the Company executed a letter of intent to be sold to WebMD; (ii) that, when asked, Defendant told Plaintiff the Company was not going to be sold and instead was committed to a five-year turnaround plan; (iii) that Defendant's suppression of information, along with the hostile work environment he created for Plaintiff, ultimately induced Plaintiff to resign from the Company, effective April 1, 2022; and (iv) that Plaintiff lost out on a "multi-million dollar" deal bonus as a result of Defendant's actions.  (*See id.*).  Plaintiff states that but for having been fraudulently misled by Defendant, he would not have resigned and would have "received a multi-million dollar bonus."  (*Id.* ¶ 6; *see also id.* ¶¶ 3–4, 38, 41–64 & 66–75).  According to Plaintiff, Defendant intended to force him to resign "so that Defendant could avoid paying Plaintiff a deal bonus payout from the sale of the Company to WebMD and instead, keep that money for himself." (*Id.* ¶ 63).

**B.    Procedural History**

On February 27, 2024, Plaintiff initiated this action by filing the Complaint against Defendant, asserting one cause of action titled "Fraudulent Suppression/Deceit."[4]  (*See generally*

---

[4]        The Complaint does not identify which state or statute/law governs this cause of action.

Compl.).  On June 11, 2024, Defendant filed a motion to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Mot.; Mov. Br.).  On July 23, 2024, Plaintiff filed an opposition (Opp. Br.), and on August 12, 2024, Defendant filed a reply (Reply Br.).  The Motion is fully briefed.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  However, the Court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."  *Id*. at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)

(noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'" (alteration in original) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004))).  Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'"  *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

### B.  Rule 9(b) Heightened Pleading Standard

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement concerning allegations of fraud.  *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012).  Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "[T]he law does not require specificity just for specificity's sake"; rather, "[t]he level of particularity required is sufficient details to put [d]efendants on notice of the 'precise misconduct with which they are charged.'"  *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 104 (D.N.J. 2011) (quoting *Franulovic v. Coca Cola Co.*, No. 07-0539, 2007 WL 3166953, at *11 (D.N.J. Oct. 25, 2007)).  In other words, to satisfy Rule 9(b)'s specificity requirement, "the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss."  *Id.* (quoting *Zebersky v. Bed Bath & Beyond, Inc.*, No. 06-1735, 2006 WL 3454993, at *4 (D.N.J.

Nov. 29, 2006)).  The Third Circuit has advised that, "at a minimum," a plaintiff must support allegations of fraud "with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1422); *see also United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016).

## III.    DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint for failure to state a claim, pursuant to Rule 12(b)(6).  (*See* Mot.; Mov. Br.; Reply Br.).  Specifically, Defendant argues the Court should grant its Motion to Dismiss for four reasons: (i) "the Complaint does not identify what state law applies, and New Jersey law does not recognize a cause of action of fraudulent suppression," but that even if the Court construed Plaintiff's claim as one for common law fraud under New Jersey law, the Complaint fails to state such a claim; (ii) the Complaint does not satisfy Rule 9(b)'s heightened pleading requirements for fraud claims as it "fails to provide the necessary 'who, what, when, where, and why' as required to state a fraud claim under Rule 9(b)"; (iii) "assuming Alabama law applies (since Alabama is where [Plaintiff] resides), his fraudulent suppression claim is barred by the two-year statute of limitations" because the Complaint was filed in February 2024—more than two years from when Plaintiff knew, or reasonably should have known, that Defendant's statements might be untrue; and (iv) "again assuming Alabama law applies, the Complaint fails to set forth sufficient factual allegations necessary to establish a plausible claim for fraudulent suppression under the *Twombly/Iqbal* standard."  (Mov. Br. at 2–3 & 14; *see also id.* at 13–32).

In opposition, Plaintiff argues (i) Defendant wrongly asserts that fraudulent suppression is

not a cause of action under New Jersey law because New Jersey does recognize a claim for "fraudulent concealment and suppression"; (ii) he satisfies Rule 9(b)'s heightened pleading requirements for fraud claims; and (iii) he plausibly states a claim under Rule 12(b)(6).  (*See generally* Opp. Br.).  Specifically, Plaintiff contends Defendant "intentionally misrepresented that Mercury Healthcare was not being sold to WebMD despite being directly asked and having actual knowledge of the letter of intent completed in December 2021[.]" (*Id.* at 7).  Additionally, Plaintiff clarifies that he is bringing his sole claim under New Jersey law, not Alabama law, and thus contends that Defendant's arguments based on the application of Alabama law are irrelevant.  (*Id.* at 1 & n.1).  Accordingly, Plaintiff submits Defendant's Motion should be denied, and, in the alternative, requests leave to amend.  (*Id.* at 7–8).

In reply, Defendant (i) reiterates that the Complaint fails to meet Rule 9(b)'s heightened pleading requirements; (ii) argues that based on a choice-of-law analysis, Alabama law applies and governs Plaintiff's sole fraud claim, and Plaintiff's Complaint fails to state a claim under Alabama law; (iii) asserts Plaintiff's opposition brief improperly contains additional facts not contained in the Complaint; (iv) contends Plaintiff has "waived and abandoned any arguments that he may have had under Alabama law"; and (v) submits that whether New Jersey law or Alabama law applies, Plaintiff's Complaint "fails to allege any actionable misrepresentations relating to then[-]existing present or past facts."  (Reply Br. at 1–3).  Further, Defendant states Plaintiff's reliance on the *McConkey v. AON Corporation* case, 804 A.2d 572 (N.J. Super. Ct. App. Div. 2004), is misplaced because that case involved claims for fraudulent inducement in the hiring and recruiting process, which is inapposite to Plaintiff's claim for fraudulent suppression.  (*Id.* at 2–3; *see also id.* at 7–11).

Here, the Court does not reach the choice-of-law issue because it finds that irrespective of

whether Alabama law or New Jersey law applies, Plaintiff's Complaint fails to meet Rule 9(b)'s heightened pleading requirements for a fraud claim. As noted above, Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). At a minimum, Plaintiff must support his allegations of fraud with "the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d at 217. Here, Plaintiff alleges that on at least two occasions—on an unspecified point after a December 2021 meeting and again at an unspecified point after the Q4 2021 Board of Directors meeting, in or around March 2022—he asked Defendant if the Company was going to be sold. (*See* Compl. ¶¶ 34–38, 50, 53 & 71). In response, Defendant told Plaintiff that the Company was not going to be sold and instead was focused on a five-year turnaround plan. (*Id.* ¶¶ 41, 53 & 71–72). However, Plaintiff's Complaint fails to allege with sufficient particularity facts relating to the "when" and "where" of the allegedly fraudulent statements.[5] For example, Plaintiff does not allege specifically when after the December 2021 and Q4 2021 Board of Directors meetings he spoke with Defendant or where these interactions with Defendant took place—whether they occurred in person, virtually, or otherwise, and whether they occurred in New Jersey, Alabama, or elsewhere. Thus, the Court finds Plaintiff's Complaint fails to satisfy Rule 9(b)'s heightened pleading requirements for fraud claims.

Additionally, the Court finds Plaintiff's Complaint otherwise fails to plausibly state a claim for fraud under New Jersey law—whether common law fraud, fraudulent inducement, fraudulent concealment, or otherwise—sufficient to withstand a Rule 12(b)(6) motion to dismiss.

---

[5]     For purposes of the instant Motion, the Court does not consider the additional facts set forth in Plaintiff's opposition brief that were not alleged in his Complaint because "[a] party cannot amend a complaint by the brief in opposition to a motion to dismiss." *Pierre-Charles v. Consumer Portfolio Servs., Inc.*, No. 17-10025, 2018 WL 3425737, at *6 (D.N.J. July 16, 2018) (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

*First*, as an initial matter, while Plaintiff clarifies in his opposition brief that he is asserting his sole claim for "fraudulent suppression/deceit" under New Jersey law, not Alabama law (Opp. Br. at 1), "fraudulent suppression" does not appear to be a recognizable cause of action under New Jersey law, but rather is a cause of action under Alabama law. *See Peters v. U.S. Dep't of Hous. & Urb. Dev.*, No. 04-6057, 2006 WL 278916, at *4 (D.N.J. Feb. 1, 2006) (construing plaintiff's claims for "fraudulent misrepresentation" and "fraudulent suppression" as common law fraud claims under New Jersey law); *see also* Mov. Br. at 2 & 13–14; Reply Br. at 4). Plaintiff did not address or respond to any of Defendant's arguments regarding the application of Alabama law to his sole claim (*see* Opp. Br.), and accordingly the Court finds Plaintiff has effectively waived any arguments he may have had under Alabama law or regarding the application of Alabama law to his claim. *See Daggett v. Waterfront Comm'n of N.Y. Harbor*, 774 F. App'x 761, 764 n.7 (3d Cir. 2019); *see also Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) ("[T]he District Court found that [the plaintiff] had ample opportunity to make this argument in response to defendants' motion to dismiss and failed to do so. Accordingly, the District Court exercised sound discretion when it refused to consider an argument that, in effect, had been waived." (citations omitted)); *cf. Miller v. Little*, No. 21-1941, 2023 WL 2529553, at *2 (M.D. Pa. Mar. 15, 2023), *aff'd*, No. 23-2037, 2024 WL 957983 (3d Cir. Mar. 6, 2024) ("The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim." (citing cases)). Thus, the Court only analyzes Plaintiff's claim under New Jersey law, not Alabama law.

*Second*, to the extent Plaintiff intended to bring a claim under New Jersey law for common law fraud, fraudulent inducement, or fraudulent misrepresentation, Plaintiff's Complaint fails to adequately state such a claim. "The standard for establishing a claim of common law fraud,

fraudulent misrepresentation, and fraudulent inducement under New Jersey law is the same"—a plaintiff must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Kare Distrib., Inc. v. Jam Labels & Cards LLC*, No. 09-0969, 2009 WL 3297555, at *4 (D.N.J. Oct. 9, 2009) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253 (N.J. 2005)); *see also Rainforest Distrib. Corp. v. Vybes L.A. LLC*, No. 20-0634, 2021 WL 3879099, at *9 (D.N.J. Aug. 31, 2021) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)); *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997); *Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521, 524 (N.J. 1981). "Misrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them." *Banco Popular N. Am.*, 876 A.2d at 261. "An alleged misrepresentation must be premised upon an assertion that is not in accord with the facts." *Read v. Profeta*, 397 F. Supp. 3d 597, 635 (D.N.J. 2019) (citing Restatement (Second) of Contracts § 159 cmt. a, c (1981)). "However, the assertion 'must relate to something that is a fact at the time the assertion is made in order to be a misrepresentation. Such facts include past events as well as present circumstances but do not include future events.'" *Id.* "Indeed, in order to constitute a fact, a statement's content must be susceptible of 'exact knowledge' at the time it is made." *Id.* (quoting *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J.) *aff'd*, 172 F.3d 859 (3d Cir. 1998)).

Here, Plaintiff's Complaint does not adequately allege how Defendant's statements constitute a "material misrepresentation of a presently existing or past fact" sufficient to state a fraud claim under New Jersey law. The Complaint alleges that "[u]pon information and belief," Defendant knew that "in December 2021, the Company executed a letter of intent to be sold to WebMD" (*id.* ¶ 66), and that "[p]rior to December 2021, Defendant learned that the Company

intended to sell its assets to WebMD and that plans had been put into place to do so" (*id.* ¶ 3), but that Defendant "intentionally suppressed" this information from Plaintiff and instead told him the Company was not going to be sold and was committed to a five-year turnaround plan (*id.* ¶¶ 38, 41, 43, 53 & 60; *see also id.* ¶¶ 66–72). Even accepting Plaintiff's allegations "upon information and belief," the Complaint does not sufficiently allege how Defendant's failure to tell Plaintiff about an alleged potential future event constitutes an actionable misrepresentation under New Jersey law.[6] *See Read*, 397 F. Supp. 3d at 635 ("Statements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong." (quoting *Alexander*, 991 F. Supp. at 435)); *Bergen Beverage Distribs. LCC v. E. Distribs., Inc.*, No. 17-4735, 2022 WL 833373, at *8 (D.N.J. Mar. 21, 2022) (same); *see also Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, No. 02-2889, 2005 WL 3164205, at *8 (D.N.J. Nov. 10, 2005), *aff'd*, 244 F. App'x 522 (3d Cir. 2007) (finding that any prediction that the defendant "would enjoy a 15% increase in sales related to future event [] cannot constitute fraud in the inducement, because a statement relating to future events cannot satisfy the element of being a statement that is known to be false at the time it is made").

Further, the Complaint does not allege that Defendant made these statements with the intent that Plaintiff would rely on them. For instance, the Complaint does not allege that Plaintiff ever told Defendant that he was considering resigning or that Plaintiff and Defendant ever had any

---

[6]     A letter of intent regarding a potential future sale is not a binding contract, nor is it something that is guaranteed to come to fruition. *See Ultraflex Sys., Inc. v. Verseidag-Indutex GmbH*, No. 01-0129, 2006 WL 1098181, at *9 (D.N.J. Mar. 30, 2006) (finding that "no reasonable jury could conclude that, given its non-binding nature, the [letter of intent] itself amounted to a fraudulent misrepresentation"); *cf. Buck Consultants, Inc. v. Glenpointe Assocs.*, No. 03-0454, 2004 WL 5370571, at *12 (D.N.J. July 23, 2004) ("Although this Court has been unable to find any New Jersey cases regarding letters of intent to sublease in this context, letters of intent have not been deemed sufficient to satisfy other claims that require the existence of an actual contract." (citing cases)); *Cal. Nat., Inc. v. Nestle Holdings, Inc.*, 631 F. Supp. 465, 471 (D.N.J. 1986) (concluding a letter of intent "clearly cannot satisfy the statute of frauds").

discussion regarding whether Plaintiff would be entitled to a deal bonus if he remained at the Company and if the Company was ever sold.  Indeed, the Complaint does not allege any facts showing Plaintiff was entitled to or promised he would receive a deal bonus, let alone a multimillion-dollar one, if he had not resigned.

Therefore, the Court finds Plaintiff's Complaint fails to adequately state a claim for fraudulent inducement, fraudulent misrepresentation, or common law fraud under New Jersey law.[7]

***Third***, to the extent Plaintiff alternatively intended to bring a fraudulent concealment or fraudulent omission claim under New Jersey law, Plaintiff's Complaint likewise fails to state such a claim.  "To state a claim for fraudulent concealment under New Jersey law, a plaintiff must allege: (1) a legal duty to disclose (2) a material fact (3) that plaintiff could not discover without defendant disclosing it; (4) that defendant intentionally failed to disclose that fact; and (5) that plaintiff was harmed by relying on the non-disclosure." *Polhill v. FedEx Ground Package Sys.*, 604 F. App'x 104, 108 n.2 (3d Cir. 2015) (citing *Rosenblit v. Zimmerman*, 766 A.2d 749, 757–58 (N.J. 2001)); *see also United Cap. Funding Grp., LLC v. Remarkable Foods, LLC*, No. 21-3291, 2023 WL 5722910, at *4 (D.N.J. Sept. 5, 2023).  Similarly, "[t]o state a fraudulent omission claim, plaintiffs generally must establish that the defendant had a duty to disclose the omitted information." *Cohen v. Subaru of Am., Inc.*, No. 20-8442, 2022 WL 721307, at *19 (D.N.J. Mar. 10, 2022) (citing *Clark v. Prudential Ins. Co. of Am.*, 289 F.R.D. 144, 184 (D.N.J. 2013)); *see also Ramirez v. World Mission Soc'y, Church of God*, No. 14-1708, 2024 WL 1366445, at *5 (D.N.J.

---

[7]      The Court also agrees with Defendant (*see* Reply Br. at 7–11) that *McConkey v. AON Corporation* is inapposite to the facts of the instant matter because there the plaintiff alleged he had been fraudulently induced during the hiring and recruitment process to leave his old job and accept a new position with the defendant. *See McConkey*, 804 A.2d 572 (N.J. Super. Ct. App. Div. 2004).  Whereas in this case, there are no allegations that Defendant fraudulently induced Plaintiff to leave a prior employer to join the Company or that Plaintiff gave up employment with another company to join the Company based on anything Defendant said or did.  (*See generally* Compl.).

Apr. 1, 2024) ("In New Jersey, fraudulent omission claims require the defendant to have a duty to disclose the omitted information." (citations omitted)). "Three general classes of transactions give rise to a duty to disclose": (i) "fiduciary relationships such as attorney and client"; (ii) "where, because of the nature of the transaction or the parties' position toward each other, 'trust and confidence ... is necessarily implied'"; and (iii) "where contracts or transactions are 'intrinsically fiduciary' because of their 'essential nature' and thus 'necessarily call [] for perfect good faith and full disclosure, without regard to any particular intention of the parties.'" *Ramirez*, 2024 WL 1366445, at *5 (alterations in original) (citation omitted).

One common element of both of these causes of action is that the plaintiff must allege that the defendant had a duty to disclose. Here, Plaintiff's Complaint does not allege any facts showing Defendant owed Plaintiff a duty to disclose information regarding the Company's alleged future plan to be sold to WebMD, nor does it allege any facts regarding a relationship between Plaintiff and Defendant that would have created such a duty. Therefore, the Court finds Plaintiff's Complaint similarly fails to adequately state a claim for fraudulent concealment or fraudulent omission under New Jersey law. *See, e.g.*, *Pushkin v. Nussbaum*, No. 12-0324, 2017 WL 1591863, at *8 (D.N.J. Apr. 28, 2017), *report and recommendation adopted*, 2018 WL 500145 (D.N.J. Jan. 19, 2018) ("Plaintiff completely fails to allege the essential elements of a claim for fraud such that he does not meet the pleading requirement of Fed. R. Civ. P. 8, let alone the more heightened pleading standard of Rule 9(b).").

In sum, the Court finds Plaintiff's Complaint fails to meet Rule 9(b)'s heightened pleading requirements and otherwise fails to plausibly state a fraud claim under New Jersey law (whether common law fraud, fraudulent inducement, fraudulent concealment, or otherwise). Therefore, the Court **GRANTS** Defendant's Motion (D.E. No. 14) and **DISMISSES** Plaintiff's Complaint (D.E.

No. 1).  However, this dismissal is *without prejudice*, and the Court grants Plaintiff leave to amend to cure the deficiencies outlined herein.

## IV.    CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss is **GRANTED**, and accordingly Plaintiff's Complaint is **DISMISSED** *without prejudice*.  Within thirty (30) days of the date of this Opinion, Plaintiff may file an amended complaint curing the deficiencies outlined herein.  An appropriate Order follows.

**Dated: June 30, 2025**                                     */s/ Esther Salas*
                                                        **Esther Salas, U.S.D.J.**

15